# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

DWIGHT HARRIS and )
MARCUS ROBINSON, )
           )
      Plaintiffs, )
           )
v. )    **Case No. 3:08-00699**
           )    **Judge Knowles**
JEAN McCORMACK, individually and as )
an Officer of the Metropolitan Nashville )
Police Department, et al., )
           )
      Defendants. )

## MEMORANDUM OPINION

### I. Introduction and Background

This matter is before the Court upon two Motions for Summary Judgment: one filed by

Defendant Metropolitan Government of Nashville and Davidson County ("Metro Government")

(Docket No. 91), and one filed by Defendant Jean McCormack (Docket No. 97). In support of its

Motion, Defendant Metro Government has filed a Memorandum of Law, a Statement of

Undisputed Facts, the Depositions of Sergeant Robert Fidler, Marcus Robinson, Dwight Harris,

Jean McCormack, and Dale Becraft, the Discovery Responses of Marcus Robinson and Dwight

Harris, and numerous other Exhibits. Docket Nos. 91 - 91-13, 94, 95. In support of her Motion,

Defendant McCormack has filed a supporting Memorandum of Law and a Statement of

Undisputed Facts. Docket Nos. 98, 99. Defendant McCormack also incorporates by reference

the Depositions included above. *See* Docket No. 97.

Plaintiffs have filed one response, addressing both Motions for Summary Judgment. Docket No. 105. In addition, Plaintiffs have filed their own affidavits. Docket Nos. 106-107. Plaintiffs have also responded to each of Defendants' Statement of Undisputed Facts. Docket Nos. 108, 109.

Defendants have filed a joint Reply, and a joint Response to Plaintiffs' Statements of Disputed Material Facts. Docket Nos. 112, 113.

Plaintiffs filed this action on July 18, 2008, alleging federal civil rights claims pursuant to 42 U.S.C. § 1983 (specifically, unlawful arrest, unreasonable search and seizure, use of excessive force, denial of medical care, and deprivation of their liberty without due process of law), and violations of the Tennessee Governmental Tort Liability Act ("TGTLA"), as well as negligence and gross negligence, intentional and negligent infliction of emotional distress, assault and battery, false arrest and imprisonment, and malicious prosecution and abuse of process. Docket Nos. 1 and 30, Complaint and Amended Complaint. Plaintiffs originally sued Officer McCormack, Chief of Police Ronal Serpas, Sheriff Daron Hall, Sergeant Robert Fidler, Officer Jeffrey Tharpe, Officer Dale BeCraft, Officer Yannick Deslauriers, Officer Matthew Valiquette, Officer Ken Bray, John Does, and James Does in their individual and official capacities.[1] *Id.*

---

[1] Chief Serpas, Sheriff Hall, and Officer Valiquette were terminated as parties in this action on February 25, 2009. *See* Docket Nos. 52, 53. Sergeant Fidler, Officer Tharpe, Officer BeCraft, and Officer Bray were terminated as parties in this action on June 24, 2010. *See* Docket Nos. 76, 77. Accordingly, the only remaining Defendants in this action are Officer McCormack, Officer Deslauriers, and the Metropolitan Government of Nashville and Davidson County, Tennessee. Officer Deslauriers, however, has not been properly served. A summons for him was returned unexecuted on March 25, 2009 (Docket No. 58), and an alias summons was issued to him on December 22, 2009 (Docket No. 72). No one has entered an appearance on his behalf, nor has he filed anything in this action, and Plaintiffs acknowledge that he has not been found for service of process (Docket No. 105). Accordingly, the only remaining Defendants are Officer McCormack and Metro Government.

Plaintiffs seek compensatory and punitive damages, costs, attorneys' fees, and any other relief the Court finds appropriate. *Id.*

Plaintiffs' claims arise out of a traffic stop and shooting on July 20, 2007. *Id.* Plaintiffs allege that they were passengers in an automobile that was the subject of an undercover drug buy/bust and emergency traffic stop. *Id.* Plaintiffs specifically allege that the Officers on the scene surrounded the car and drew their weapons, and that Officer McCormack discharged her weapon into the rear passenger compartment of the vehicle, shattering the glass, and scattering the glass both inside the car and onto the surrounding ground. *Id.* Plaintiffs aver that the discharged round struck Plaintiff Harris in the left forearm, where it remains lodged, and that Plaintiff Robinson got out of the vehicle and laid on the glass-covered ground, causing shattered glass to pierce his leg.[2] *Id.*

With regard to Defendant Metro Government, Plaintiffs aver that it has a policy, practice, or custom of failing to properly hire, supervise, instruct, train, control, investigate, or discipline its officers. *Id.*

Defendants Metro Government and McCormack filed the instant Motions and supporting materials on January 12, 2011, and January 14, 2011, respectively. Docket Nos. 91, 97. Defendant Metro Government argues that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against it, because all federal claims against it have been dismissed pursuant to stipulation of the parties (Docket No. 90), and there is an identical case against it asserting Plaintiffs' state law claims pending in the Davidson County Circuit

---

[2] Plaintiffs remaining allegations relate to Defendants who have been terminated as parties to this action. Because those allegations are not germane to Plaintiffs claims against Defendant McCormack or Defendant Metro Government, the Court will not discuss them.

Court. Docket No. 91. Defendant Metro Government also argues that, should the Court exercise supplemental jurisdiction, it is nonetheless entitled to summary judgment on the merits because: (1) Plaintiffs claims against it arise from alleged civil rights violations, and Metro Government is immune from suit for such claims under the Tennessee Governmental Tort Liability Act ("TGTLA"); (2) Metro Government is also immune, under the TGTLA, from liability for claims of false arrest, intentional infliction of emotional distress, and abuse of process; (3) there is no evidence that Metro Government committed any independent acts of negligence that could potentially render it liable for the intentional torts of assault and battery or false imprisonment; and (4) neither Plaintiff has suffered severe emotional injury sufficient to present a jury question on their negligent infliction of emotional distress claims, and, even if they had, their comparative negligence was at least 50%, which bars them from recovering damages. *Id.*

Defendant McCormack argues that she is entitled to summary judgment because: (1) Plaintiffs fail to state a Fourth Amendment claim against her, as Plaintiffs claim that she fired her weapon accidentally, and therefore the "seizure" was not an intentional act; (2) Plaintiffs fail to state a Fifth Amendment claim against her because the Fifth Amendment addresses misconduct of federal officers, and she is an employee of the Metro Nashville Police Department; (3) Plaintiffs fail to state an Eighth Amendment claim against her because the Eighth Amendment applies only to convicted and imprisoned persons, and, at the time of the incident in question, Plaintiffs were neither; (4) Plaintiffs fail to state a Fourteenth Amendment claim against her because the Fourteenth Amendment does not apply to her; (5) Plaintiffs cannot sustain a §1983 claim against her based upon negligence; (6) she is qualifiedly immune; (7) Tennessee law does not recognize a private cause of action for damages based on violations of the Tennessee

4

Constitution; (8) Plaintiffs fail to state a claim against her for assault and battery, false arrest, false imprisonment, and/or outrageous conduct/intentional infliction of emotional distress because Plaintiffs testified under oath that she discharged her weapon accidentally, and the aforementioned are intentional torts; (9) Plaintiffs also fail to state a claim against her for false arrest, false imprisonment, abuse of process, or malicious prosecution because they testified under oath that other officers (not Defendant McCormack) arrested and prosecuted them; and (10) Defendant is immune from liability for negligent acts under the TGTLA, with the proper party for those claims being Defendant Metro Government, as her employer. Docket No. 97.

Plaintiffs respond that, despite the numerous stipulated and voluntary dismissals in this action, they are proceeding with the state law claims against Defendant Metro Government under the TGTLA "for the negligent conduct of Officer McCormack and negligent infliction of emotional distress." Docket No. 105. Plaintiffs also respond that they are pursuing their §1983 claims against Defendant McCormack for violating their civil rights by her "use of excessive and deadly force and unreasonable seizure," and their state law claims of assault and battery, negligence and gross negligence, outrageous conduct and intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id.* Plaintiffs argue that they are permissibly proffering inconsistent alternative claims that Defendant McCormack acted intentionally in using excessive and deadly force against them in violation of the Fourth Amendment, and also that she acted negligently in accidentally firing her weapon. *Id.*

Defendants, in their Joint Reply, argue that, while Fed. R. Civ. P. 8 allows Plaintiffs to plead inconsistent alternative theories in their pleadings, they must pick one theory at the summary judgment stage, as a motion for summary judgment is not a pleading. Docket No. 112,

5

*citing, Armada de la Republica Argentina v. Yorkington Limited Partnership, et al*, 1995 WL

46394 at *13, n. 12 (D.C. Dist. 1995); *Palandjian v. Pahlavi*, 614 F. Supp. 1569, 1579 (D. Mass.

1985). Defendants argue that if Plaintiffs wish to pursue a Fourth Amendment claim against

Defendant McCormack based on an intentional discharge of her weapon, then Defendant Metro

Government would be immune, but if this Court accepts Plaintiffs testimony as true that

Defendant McCormack fired her weapon unintentionally, then all claims against her must be

dismissed, as Plaintiffs cannot be "seized" under the Fourth Amendment by an unintentional act,

and she would be immune from a negligence action. *Id.* Defendants argue that Plaintiffs must

"pick[] their poison," as, based on their alternative theories, at least one (if not both) of the

Defendants is entitled to summary judgment. *Id.*

For the reasons discussed below, Defendant Metro Government's Motion for Summary

Judgment (Docket No. 91) will be granted, and Defendant Jean McCormack's Motion for

Summary Judgment (Docket No. 97) will be granted in part and denied in part.

## II. Undisputed Facts[3]

On July 20, 2007, Plaintiffs Harris and Robinson were passengers in an automobile being

driven by Jessie Tucker that was stopped by Metro Nashville Police. Docket No. 91-2,

Deposition of Plaintiff Robinson ("Robinson Dep.") at 18. Docket No. 91-1, Deposition of

Robert Fidler ("Fidler Dep.") at 11, 24. The stop occurred after members of MPD's Crime

Suppression Unit ("CSU") had set up surveillance on a controlled drug buy occurring in the

---

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

Most of the Court's initial discussion regarding the facts and the law relate to Plaintiff Harris. Plaintiff Robinson's claims will be discussed in a separate section below.

Kroger parking lot on Long Hollow Pike in Goodlettsville. Fidler Dep. at 13-15, 18-20. A woman gave money to the driver of the vehicle, Mr. Tucker, in a transaction that took place in the back seat of the vehicle. Robinson Dep. at 18-19. After the woman, a confidential informant, returned to MPD Officer Yannick Deslaurires, he confirmed to the other CSU officers that a drug transaction had occurred. Fidler Dep. at 20.

Following the transaction, the subject vehicle left Kroger, got on the interstate, and started heading toward Lebanon. *Id.*, at 19-20. CSU officers followed the subject vehicle on the interstate for about 15-20 minutes. Robinson Dep. at 20; Fidler Dep. at 22-23. As the subject vehicle neared the Wilson County line, and the unmarked police officers got in a favorable position around the vehicle, Sgt. Fidler gave the order to the other CSU officers to activate their lights and initiate the stop of the vehicle. Fidler Dep. at 28-30. The unmarked police car in front of the subject vehicle slowed down. Robinson Dep. at 21. Mr. Tucker brought his vehicle to a stop after striking one of the police cars. Robinson Dep. at 21; Docket No. 91-3, Deposition of Plaintiff Harris ("Harris Dep.") at 36.

The officers approached Mr. Tucker's vehicle with their weapons drawn. Harris Dep., 36; Robinson Dep., 26. At this point, the testimony of the parties diverges. Defendant McCormack testified that she intentionally discharged her weapon into the rear passenger compartment of the vehicle, aiming at Plaintiff Harris' hands, intending to "stop the threat." Docket No. 91-4, Deposition of Officer McCormack ("McCormack Dep.") 8-9, 99. Both Plaintiffs testified in their depositions, however, that they thought that Defendant McCormack had accidentally fired her weapon, based upon statements she made and her reaction to the

7

shooting.[4]  Plaintiff Harris was struck by glass from the car window that shattered when it was shot, and was struck by the bullet in the left forearm.  Harris Dep., p. 91.

It is also important to note that Defendant McCormack testified that she intentionally shot Plaintiff Harris because his hands were at his waist area, and she believed him to be reaching for a weapon.  McCormack Dep., 8-9, 99.  Plaintiff Harris, on the other hand, testified in his deposition that his hands were raised in the air when he was shot.  Harris Dep., 36; Docket No. 106, Affidavit of Plaintiff Harris ¶ 3.

Plaintiff Robinson did not see Defendant McCormack before the shot was fired.  Robinson Dep., 27-28.  Plaintiff Robinson was not hit by broken glass at the time Defendant McCormack fired her weapon.  Id., 33.  Plaintiff Robinson got cut by the broken glass when he got on the ground.  Id., p. 34.  Officer Deslauriers arrested Plaintiffs.  Harris Dep., 44-45; Robinson Dep., 46.

An ambulance was called to the scene of the incident.  Fidler Dep. at 43-44.  Plaintiff Harris refused transport to the hospital, and signed a Nashville Fire Department Incident Detail sheet refusing transport.  Docket No. 91-13.  Both Plaintiff Harris and Plaintiff Robinson were seen by a nurse when they arrived at the Criminal Justice Center for booking.  Harris Dep., 63; Robinson Dep., 55.  Plaintiff Robinson never asked to see a physician while incarcerated at the Criminal Justice Center.  Robinson Dep., 41.  As of the date of his deposition, Plaintiff Harris

---

[4]  As discussed above, if Defendant McCormack intentionally fired her weapon, Metro Government cannot be liable under the TGTLA.  If Defendant McCormack negligently fired her weapon, Plaintiffs could recover against Metro Government pursuant to the TGTLA.

As will be discussed below, however, the Court concludes that it must accept Defendant McCormack's testimony that she intentionally fired her weapon at Plaintiff Harris.

had not undergone any psychological treatment as a result of the July 20, 2007 incident. Harris Dep., 91-92, 104.

Plaintiffs have no knowledge regarding Metro Nashville Police Department's training curriculum, hiring procedures, or disciplinary manners/procedures. Robinson Dep., 45, 52-54; Harris Dep., 69-70.

All three individuals in the vehicle were arrested. Plaintiff Robinson subsequently pled guilty to criminal charges arising out of the incident (Robinson Dep. at 12), as did the driver of the vehicle, Jessie Tucker. Docket No. 91-6.

### III. Standards of Review and Analysis

#### A. Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v.*

9

*Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

It is important to note at the outset that Plaintiffs have made a significant concession with regard to the claims they are making in this action. In their Response to the Summary Judgment Motions, Plaintiffs have stated as follows:

> Given the status of the pleadings and the numerous dismissals of Defendants and claims, Plaintiffs make the following statement concerning their claims against the remaining Defendants:
>
> Plaintiffs intend to proceed with the following claims against Officer McCormack:
>
> > (1) Federal claims pursuant to 42 U.S.C. § 1983, for violation of their civil rights; namely, for Officer McCormack's use of excessive and deadly force and unreasonable seizure in violation of the Fourth Amendment;
> >
> > (2) State law claims for assault and battery, negligence and gross negligence, outrageous

10

> conduct and intentional infliction of emotional
> distress, and negligent infliction of emotional
> distress.
>
> With regard to Metro's liability in this action,
> Plaintiffs intend to proceed with their state law
> claims against Metro for liability under Tennessee's
> Governmental Tort Liability Act (hereafter,
> "TGTLA") for the negligent conduct of Officer
> McCormack and negligent infliction of emotional
> distress.

Docket No. 105, p. 2.

Therefore, Defendants' Motions for Summary Judgment with regard to all other claims

except those stated above will be granted, and those claims not listed above will be dismissed.

## B.  42 U.S.C. § 1983

### 1.  Generally

Plaintiffs allege violations of their Fourth Amendment rights pursuant to 42 U.S.C.

§1983.[5] *See* Docket Nos. 1, 30.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress...

Thus, in order to state a claim under §1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S.

---

[5] Plaintiffs are no longer pursuing their Fifth, Eighth, or Fourteenth Amendment claims
against Defendant McCormack.  *See* Docket No. 105.

42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,*

474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,*

436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised

power "possessed by virtue of state law and made possible only because the wrongdoer is clothed

with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313

U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. Fourth Amendment

Plaintiffs aver that Defendant McCormack violated their Fourth Amendment rights by her

"use of excessive and deadly force and unreasonable seizure." Docket Entry Nos. 1, 30. The

Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, and particularly
> describing the place to be searched, and the persons or things to be
> seized.

U.S. Const. amend. IV.

The use of force by a police officer during an arrest, investigatory stop, or other "seizure"

of a person falls within the scope of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386,

388, 396-397 (1989). In order to prevail on this claim, Plaintiffs must show: (1) that a seizure

occurred, and (2) that the force used in making the seizure was unreasonable. *Brower v. County*

*of Inyo,* 489 U.S. 593, 599 (1989). A free citizen's claim that law enforcement officials used

excessive force in the course of making an arrest, investigatory stop, or other "seizure" of his person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of a seizure "depends on not only when a seizure is made, but also how it is carried out." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). To determine the constitutionality of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.*

"The 'reasonableness' of a particular use of force must be judged from the prospective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split/second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

### 3. Defendant McCormack

#### a. Individual Capacity and Qualified Immunity

In order to hold Defendant McCormack liable in her individual capacity, Plaintiffs must present affirmative evidence that Defendant McCormack violated their rights. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). *See also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986); *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

While it is undisputed that Defendant McCormack was acting within the scope of her

employment as a Metro police officer, that she was acting under color of law, and that she discharged her weapon, she argues that she did not violate Plaintiffs' rights because her actions were reasonable in light of the circumstances, *i.e.*, that Plaintiff Harris was reaching for a possible weapon, such that she is shielded by qualified immunity.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009)*, quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson,* 129 S.Ct. at 815. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). It applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson,* 129 S.Ct. at 815*, quoting Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting).

In the case at bar, a genuine issue as to material fact exists with regard to whether Plaintiff Harris' hands were up at the time Defendant McCormack fired her weapon or whether they were "aggressively pulling at his waistband." The reasonableness of Defendant McCormack's discharging her weapon depends upon the resolution of this disputed factual issue. Therefore, Defendant McCormack is not qualifiedly immune.

Because a genuine issue as to material fact exists with regard to facts relating to Defendant McCormack's individual liability under § 1983, her Motion for Summary Judgment

will be denied on this issue.

### b. Official Capacity

With regard to Plaintiffs' official capacity claims against Defendant McCormack, in complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id.*

In the case at bar, Defendant McCormack is an employee of the Metro Government. Thus, inasmuch as Plaintiffs bring the instant § 1983 claim against Defendant McCormack in her official capacity, Defendant McCormack stands in the shoes of Metro Government. Because Defendant McCormack stands in the shoes of Metro Government, Metro Government is the proper Defendant for Plaintiffs' official capacity claims. Accordingly, Plaintiffs cannot sustain their official capacity claims against Defendant McCormack.

### 4. Defendant Metro Government

Although Defendant McCormack stands in the shoes of Metro Government for purposes of Plaintiffs' official capacity §1983 claims against her, the parties have stipulated to the dismissal of all §1983 claims against Defendant Metro Government. *See* Docket No. 90. Because all §1983 claims against Defendant Metro Government have been dismissed, Plaintiffs cannot recover on this claim.

## C. Pendent State Law Claims

As an initial matter, the parties agree that if Defendant McCormack intentionally discharged her weapon, Defendant Metro Government cannot be held liable for her actions. *See* Docket Nos. 95, 98, 105, 112. The TGTLA, T.C.A. § 29-20-101 *et seq.*, states the general rule that all governmental entities are immune from suit for any injury that may result from the activities of such governmental entities when they are engaged in the exercise and discharge of any of their functions, governmental or proprietary. T.C.A. § 29-20-201(a). Another provision of the TGTLA provides that the immunity from suit of governmental entities "is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ." In other words, governments are not immune for injuries proximately caused by a negligent act or omission of an employee. Thus, if Defendant McCormack acted negligently, Defendant Metro Government is not immune from suit; if she acted intentionally, however, T.C.A. § 29-20-205 does not apply, and Defendant Metro Government is immune from suit under the general rule set forth in T.C.A. § 29-20-201(a).

As discussed above, Plaintiffs are proffering inconsistent alternative claims as to whether Defendant McCormack acted intentionally or negligently. The only proof that supports a negligence theory comes from Plaintiffs themselves, who opined during their depositions that Officer McCormack accidentally shot Plaintiff Harris. Defendant McCormack, however, testified that she intentionally shot Plaintiff Harris.

Fed. R. Civ. P. 56(c)(1) provides in relevant part:

> (2) **Objection That a Fact Is Not Supported by Admissible Evidence**. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be

admissible in evidence.

. . .

> (4) **Affidavits or Declarations**. An affidavit or declaration used to
> support or oppose a motion must be made on personal knowledge,
> set out facts that would be admissible in evidence, and show that
> the affiant or declarant is competent to testify on matters stated.

Plaintiffs' statements that Defendant McCormack's actions were accidental and not intentional are nothing more than speculation that would not be admissible in evidence. Moreover, in view of Defendant McCormack's testimony under oath that she intentionally shot Plaintiff Harris, no reasonable jury could conclude otherwise. Thus, there is no genuine issue that Defendant McCormack intentionally shot Plaintiff Harris.

Because Defendant McCormack intentionally shot Plaintiff Harris, Plaintiffs cannot recover on their state law claims against Metro Government, and Defendant Metro Government's Motion for Summary Judgment will be granted.

It is also axiomatic that because Defendant McCormack intentionally discharged her weapon, she cannot be held liable to either Plaintiff for any negligence based claims. Accordingly, Defendant McCormack is entitled to a judgment as a matter of law on Plaintiffs' claims for negligence, gross negligence, and negligent infliction of emotional distress.

Plaintiffs also assert against Defendant McCormack the pendent state law claims of assault and battery, outrageous conduct, and intentional infliction of emotional distress. Docket No. 105, p. 2. As has been discussed above, genuine issues as to material fact exist concerning the reasonableness of Defendant McCormack's discharging her weapon, such that summary judgment on these claims cannot be granted. Moreover, Defendant McCormack has failed to demonstrate that she is entitled to a judgment as a matter of law on these claims. Accordingly,

17

Defendant McCormack's Motion for Summary Judgment will be denied with regard to the intentional state law claims of assault and battery, outrageous conduct, and intentional infliction of emotional distress.

## D.  Claims of Plaintiff Robinson

Most of the arguments in the instant Motions and in Plaintiffs' Response to those Motions relate to Plaintiff Harris.  The nature of Plaintiff Robinson's claims against Defendant McCormack is very vague.

The main statement regarding Plaintiff Robinson in Plaintiffs' Response to the instant Motions is in a section headed "Negligent infliction of emotional distress claims."  Docket No. 105, p. 6-8.  Plaintiffs state:

> As for Plaintiff Robinson he sustained injury to his left knee from
> broken glass on the ground after Officer McCormack fired her
> weapon through the rear passenger window of Tucker's vehicle
> [footnote].

*Id.* at 7-8.

The footnote accompanying the quoted material states, "Plaintiff Robinson testified in his deposition that he sustained cuts to his knee from glass lying on the ground after Officer McCormack fired her weapon. (Dep. of Robinson, at 33-38)."  Docket No. 105, p. 8.  As discussed above, after Plaintiff Harris was shot, Plaintiff Robinson got himself out of the car and lay down on the ground.  Plaintiff Robinson gave somewhat conflicting testimony as to those circumstances.  At one point he stated:

> When I got out of the car [Defendant McCormack] pointed the gun
> and told me, get down, get down, so I just got down and I guess the
> glass when she shot that back window out – it's laying right there,
> and I guess when I got down, I thought when I layed down I guess
> the glass got in my knee from the glass from the back window.

Docket No. 91-2, p. 34.

Plaintiff Robinson also testified that, after the shooting of Plaintiff Harris, he "just laid down." Docket No. 91-2, p. 23. He further stated:

> I just – I believe told me [*sic*] to just get on – now she's got the gun. She's saying, just get on the ground. I'm thinking she's going to shoot again, so I get on the ground.

*Id.*

At another point, however, Plaintiff Robinson testified:

> She pointed the gun like – because I jumped out of the car. I was so scared I just figured that was going to start shooting in the car. I opened the door and stood beside her. I'm right here beside her. I'm asking her, what do you want me to do, what do you want me to do. She points the gun and say, get out. I get out. From then everybody just – from there all the focus was on Dwight [Harris] because he was the one shot, so I just laid there and everybody ran over to him.

*Id.*, p. 31.

At the time his knee was cut, he did not feel anything. *Id.* When the ambulance arrived, Plaintiff Robinson did not approach the ambulance or request treatment. He stated that the officers made him feel as if the ambulance was there for Harris, so he did not ask the paramedics to examine him. *Id.* at 37.

While Tennessee state courts recognize the tort of intentional infliction of emotional distress, they typically refer to this tort as "outrageous conduct." *See MacDermid v. Discovery Fin. Servs.,* 488 F.3d 721, 729 (6th Cir. 2007) *citing Bain v. Wells,* 936 S.W.2d 618, 622 n.3 (Tenn. 1997). "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily hard to the other results from it, for such bodily harm." *Bain,* 936 S.W.2d at 622 (quoting

19

Restatement Second) of Torts § 46(1)). To prove liability for outrageous conduct under

Tennessee law, a plaintiff must prove: (1) the conduct complained of was intentional or reckless;

(2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct

complained of resulted in serious mental injury. *Id.* The Tennessee Supreme Court has stated:

> The cases thus far decided have found liability only where the
> defendant's conduct has been extreme and outrageous. It has not
> been enough that the defendant has acted with an intent which is
> tortuous or even criminal, or that he has intended to inflict
> emotional distress, or even that his conduct has been characterized
> by "malice," or a degree of aggravation which would entitle the
> plaintiff to punitive damages for another tort. Liability has been
> found only where the conduct was so outrageous in character, and
> so extreme in degree, as to go beyond all bounds of decency, and to
> be regarded as atrocious and utterly intolerable in a civilized
> community. Generally, the case is one in which the recitation of
> the facts to an average member of the community would arouse his
> resentment against the actor, and lead him to exclaim,
> "outrageous."

*Bain*, 936 S.W.2d at 622, *quoting Medlin v. Allied Inv. Co.,* 298 S.W.2d 270, 274 (Tenn. 1996).

Even assuming that Defendant McCormack did tell Plaintiff Robinson to get on the

ground, her conduct doing so, under the circumstances, was not "outrageous." Moreover,

Plaintiff Robinson has not shown that he suffered any serious mental injury as a result of his

lying on the ground and having his knee cut on glass that was there as a result of Defendant

McCormack's shooting through the rear window. *See, e.g., Frometh v. Metropolitan*

*Government,* 158 F. Supp. 2d 787, 796 (M.D. Tenn. 2001) ("Without anything more than

[plaintiff's] pleading outrageous conduct as evidence of serious mental injury, plaintiff cannot

survive the defendants' motions for summary judgment on his outrageous conduct claim.")

Additionally, Plaintiff Robinson cannot sustain his § 1983 claims against Defendant

McCormack for alleged "use of excessive and deadly force and unreasonable seizure in violation of the Fourth Amendment," because Officer McCormack did not use any force against Plaintiff Robinson nor did she "seize" Plaintiff Robinson.

To the extent that Plaintiff Robinson is claiming that an alleged unreasonable seizure occurred during the traffic stop, his argument must fail. There is no proof that Defendant McCormack was the one who made the stop of the vehicle in which Plaintiff Robinson was riding.

Furthermore, the mere stopping of the vehicle in which Plaintiff Robinson was a passenger, even if it was accomplished by Officer McCormack, was not objectively unreasonable. As the undisputed facts show, the Officers who stopped the vehicle clearly had probable cause to do so.

To the extent that Plaintiff Robinson avers that the shooting of Plaintiff Harris somehow violated Plaintiff Robinson's Fourth Amendment rights, that claim must also fail. Plaintiff has not cited a single case finding a Fourth Amendment violation in which a police officer fired a shot into a stopped vehicle, but did not hit, or even aim at, the person making the Fourth Amendment claim. *Cf. McAllister v. New York City Police Dept.,* 49 F. Supp. 2d 688, 698-99 (S.D.N.Y 1999) (dismissing excessive force claim where shots fired into car did not hit or hurt the plaintiff).

With regard to Plaintiff Robinson's claims for assault and battery, Defendant McCormack argues that Plaintiffs have not asserted that she acted intentionally and, therefore, they cannot prove that she committed assault and battery. In making this argument, Defendant McCormack focuses on the testimony of Plaintiffs that her firing of her weapon was accidental. The Court

has concluded, however, that Plaintiffs' testimony on this point cannot create a genuine issue as to material fact, and that Officer McCormack's actions were intentional.

Defendant McCormack has not shown that she is entitled to a judgment as a matter of law with regard to Plaintiffs' claims of assault and battery. Defendant McCormack, however, is entitled to a judgment as a matter of law with regard to all claims asserted by Plaintiff Robinson except assault and battery.

## IV. Conclusion

For the foregoing reasons, the Summary Judgment Motion of Defendant Metro Government (Docket No. 91) will be GRANTED, the Court finding that there is no genuine issue as to any material fact and that Defendant Metro Government is entitled to a judgment as a matter of law.

Defendant McCormack's Motion for Summary Judgment (Docket No. 97) will be GRANTED IN PART AND DENIED IN PART. With regard to both Plaintiffs, the Motion will be GRANTED as to their official capacity claims against Defendant McCormack.

With regard to Plaintiff Harris, the Motion will be GRANTED as to his claims of negligence, gross negligence, and negligent infliction of emotional distress. It will be DENIED with regard to his claims under § 1983, his state law claims of assault and battery, and his state law claims of outrageous conduct and intentional infliction of emotional distress.

With regard to Plaintiff Robinson, Defendant McCormack's Summary Judgment Motion will be GRANTED with regard to his claims under § 1983, his claims for negligence, gross negligence, negligent infliction of emotional distress, outrageous conduct and intentional infliction of emotional distress. It will be DENIED with regard to his state law claims of assault

and battery.

An appropriate Order will be entered.

E. CLIFTON KNOWLES
United States Magistrate Judge